UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

REBECCA P.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

6:21-CV-06083-LJV
DECISION & ORDER

---

On January 29, 2021, the plaintiff, Rebecca P. ("Rebecca"), brought this action under the Social Security Act ("the Act"). Docket Item 1. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2] *Id.* On December 9, 2021, Rebecca moved for judgment on the pleadings, Docket Item 8; on May 2, 2022, the Commissioner responded and cross-

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial. Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Rebecca applied for both Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). One category of persons eligible for DIB includes any adult with a disability who, based on her quarters of qualifying work, meets the Act's insured-status requirements. *See* 42 U.S.C. § 423(c); *Arnone v. Bowen*, 882 F.2d 34, 37-38 (2d Cir. 1989). SSI, on the other hand, is paid to a person with a disability who also demonstrates financial need. 42 U.S.C. § 1382(a). A qualified individual may receive both DIB and SSI, and the Social Security Administration uses the same five-step evaluation process to determine eligibility for both programs. *See* 20 C.F.R. §§ 404.1520(a)(4) (concerning DIB), 416.920(a)(4) (concerning SSI).

moved for judgment on the pleadings, Docket Item 10; and on May 26, 2022, Rebecca replied, Docket Item 11.

For the reasons that follow, this Court grants Rebecca's motion in part and denies the Commissioner's cross-motion.[3]

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Rebecca argues that the ALJ erred in two ways. *See* Docket Item 8-1. First, she argues that the ALJ improperly evaluated her fibromyalgia.[4] *Id.* at 14-18. Second, she argues that the ALJ impermissibly relied on his own lay opinion in crafting her RFC.[5] *Id.* at 19-21. This Court agrees that the ALJ erred and, because that error prejudiced Rebecca, remands the case to the Commissioner.

### II. ANALYSIS

Rebecca first argues that the ALJ's evaluation of her fibromyalgia was inconsistent with SSR 12-2p and that the ALJ failed to consider her fibromyalgia at step three. *Id.* at 14-18.

SSR 12-2p explains how the Commissioner decides whether a claimant's fibromyalgia is a medically determinable impairment and, if so, how that impairment is

---

[4] "Fibromyalgia" is "[a] common syndrome of chronic widespread soft-tissue pain accompanied by weakness, fatigue, and sleep disturbances." *Fibromyalgia*, Stedmans Medical Dictionary § 331870, Westlaw (database updated Nov. 2014). The cause of fibromyalgia is unknown, and the disorder disproportionately impacts women. *Id.*

[5] A claimant's RFC "is the most [she] can still do despite [her] limitations . . . in an ordinary work setting on a regular and continuing basis." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996)). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*

3

considered during the rest of the disability determination process.  *See* SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012).

A claimant's fibromyalgia is a medically determinable impairment if it is diagnosed by a physician and meets either the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria.  *See id.*  The 1990 criteria require a claimant to show: (1) "[a] history of widespread pain"; (2) "[a]t least 11 positive tender points on physical examination"; and (3) "[e]vidence that other disorders could cause the symptoms or signs were excluded."  SSR 12-2p, 2012 WL 3104869, at *2-3 (July 25, 2012).  The 2010 criteria require a claimant to show: (1) "[a] history of widespread pain"; (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."  *Id.* at *3.

If a claimant's fibromyalgia is a medically determinable impairment, then at step three, the ALJ considers whether it meets or medically equals any of the listed impairments that might apply—such as listing 14.09, the listing for inflammatory arthritis—because there is no specific listing for fibromyalgia.  *See id.* at *6; 20 C.F.R. §§ 404.1520(c), 416.920(c).  A claimant can show that her medically determinable impairment meets the criteria for inflammatory arthritis under listing 14.09 in any of four different ways.  *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 14.09.

4

First, she may show "[p]ersistent inflammation or persistent deformity of" (1) "[o]ne or more major peripheral weightbearing joints resulting in the inability to ambulate effectively"; or (2) "[o]ne or more peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively[.]"  *Id.* at § 14.09(A).

Second, she may show "[i]nflammation or deformity in one or more major peripheral joints with" (1) "[i]nvolvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity"; and (2) "[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)."  *Id.* at § 14.09(B).

Third, she may show "[a]nkylosing spondylitis[6] or other spondyloarthropathies, with" (1) "[a]nkylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 45° or more of flexion from the vertical position (zero degrees)"; or (2) "[a]nkylosis (fixation) of the dorsolumbar or cervical spine as shown by appropriate medically acceptable imaging and measured on physical examination at 30° or more of flexion (but less than 45°) measured from the vertical position (zero degrees), and involvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity."  *Id.* at § 14.09(C).

Fourth, she may show "[r]epeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or

---

[6] "Ankylosing spondylitis" is the "arthritis of the spine, resembling rheumatoid arthritis, which may progress to bony ankylosis with ossification of the anterior and posterior longitudinal ligaments[.]"  *Ankylosing Spondylitis*, Stedmans Medical Dictionary § 840280, Westlaw (database updated Nov. 2014).

involuntary weight loss) and one of the following at the marked level" (1) "[l]imitation of activities of daily living"; (2) "[l]imitation in maintaining social functioning"; or (3) "[l]imitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace."  *Id.* at § 14.09(D).

In many cases reviewing disability claims based on fibromyalgia, the issue stems from the ALJ's decision at step two that fibromyalgia was not a severe impairment. *See, e.g.*, *Soto v. Barnhart*, 242 F. Supp. 2d 251, 254 (W.D.N.Y. 2003); *Willoughby v. Comm'r of Soc. Sec.*, 332 F. Supp. 2d 542, 546 (W.D.N.Y. 2004); *Ortiz v. Astrue*, 875 F. Supp. 2d 251, 259 (S.D.N.Y. 2012).  Here, that is not the case:  at step two, the ALJ found that Rebecca's fibromyalgia was a severe medically determinable impairment. *See* Docket Item 7 at 22.  But at step three, the ALJ noted only that "[t]he undersigned has specifically considered listings . . . 12.04, 12.06, and 14.02[,] finding that the totality of the evidence of record is insufficient to support a finding that [Rebecca's] impairments meet or equal any listing level impairment."  *Id.* at 23.  And that step three analysis of Rebecca's physical impairments was insufficient for two reasons.

First, the ALJ erred by considering Rebecca's physical impairments only under listing 14.02.[7]  That listing deals with systemic lupus erythematosus ("SLE"),[8] which the

---

[7] The ALJ also addressed listings 9.00, 12.04, and 12.06.  *See* Docket Item 7 at 23.  Listings 12.04 and 12.06 involve depressive, bipolar, and related disorders and anxiety and obsessive-compulsive disorders, respectively.  Rebecca does not challenge the ALJ's step three consideration of her mental impairments.  And the only listing the ALJ addressed with physical impairments was 14.02, as listing 9.00 involves endocrine disorders, such as Rebecca's diabetes mellitus, and are evaluated "under the listings for other body systems."  20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 9.00(B)(2).

[8] "Systemic lupus erythematosus" is "an inflammatory connective tissue disease with variable features, frequently including fever, weakness and fatigability, joint pains or arthritis resembling rheumatoid arthritis, diffuse erythematous skin lesions on the face, neck, or upper extremities, with liquefaction degeneration of the basal layer and

ALJ found was another of Rebecca's severe impairments at step two. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 14.02. But it was incumbent on the ALJ to consider Rebecca's fibromyalgia under listing 14.09, and any other relevant listing, as the criteria under listings 14.02 and 14.09 are not the same. *See* SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012); 20 C.F.R. Pt. 404, Subpt. P, App'x 1 §§ 14.02, 14.09. And listing 14.09 may well be relevant to the impairment of fibromyalgia. *See* SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012) ("At step 3 . . . we determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.").

And even if that were not true, the ALJ's analysis of Rebecca's physical impairments under listing 14.02 was too conclusory. To be sure, that error does not always require remand. *See Berry v. Schweiker*, 675 F.2d 464, 458 (2d Cir. 1982) ("[I]n spite of the ALJ's failure to explain his rejection of the claimed listed impairments, we were able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence."). But this Court is not a medical professional, and fibromyalgia is a condition that is difficult to define and appreciate. *See Ortiz*, 875 F. Supp. 2d at 263 ("As no objective tests can verify the existence of fibromyalgia, a diagnosis of the condition requires ongoing evaluation and monitoring of the patient's symptoms."). So without some reasoned

---

epidermal atrophy, lymphadenopathy, pleurisy or pericarditis, glomerular lesions, anemia, hyperglobulinemia, and a positive [lupus erythematosus] cell test result, with serum antibodies to nuclear protein and sometimes to double-stranded DNA and other substances." *Systemic Lupus Erythematosus (SLE)*, Stedmans Medical Dictionary § 515390, Westlaw (database updated Nov. 2014).

7

explanation as to why Rebecca's fibromyalgia-related physical impairments did not meet or medically equal one of the listings here, the Court cannot perform the meaningful review that it is required to perform.  *Cf. Raymond v. Comm'r of Soc. Sec.*, 357 F. Supp. 3d 232, 240 (W.D.N.Y. 2019) ("In sum, the ALJ assessed Plaintiff with the severe impairment of Sjorgren's syndrome . . . [and w]ithout additional explanation by the ALJ as to how she concluded that Plaintiff does not meet the requirements of Listing 14.10(A), the Court is unable to assess whether the ALJ's conclusion is supported by substantial evidence."); *see also Henricks v. Comm'r of Soc. Sec.*, 452 F. Supp. 2d 194, 199 (W.D.N.Y. 2006) ("The Court's jurisdiction under 42 U.S.C. § 405(g) is limited.  I cannot make an independent determination as to whether the record supports a finding that plaintiff meets or equals Listing 14.02.") (citation omitted).

What is more, there is evidence in the record that might well support a finding that Rebecca's fibromyalgia was disabling under listing 14.09—for example, listing 14.09(B).  Rebecca's treatment records confirm a history of unilateral primary osteoarthritis in her right and left knees, trochanteric bursitis in both hips, right rotator cuff tendonitis, and cervical spondylosis—all impacting her musculoskeletal system.  *See* Docket Item 7 at 386, 392, 408, 422, 638, 640.  She also had other issues impacting her immune and integumentary systems that might be related to her

fibromyalgia: hair loss, Sjögren's syndrome,[9] and malar rash.[10] *Id.* at 382, 440. Further, she complained of severe fatigue and reported sleeping 15 to 17 hours per day. *See id.* at 440, 445, 448. So the evidence may show that Rebecca had "[i]nflammation or deformity in one or more major peripheral joints with" (1) "[i]nvolvement of two or more organs/body systems with one of the organs/body systems involved to at least a moderate level of severity"; and (2) "[a]t least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss)." 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 14.09(B). Therefore, and without any explanation in what might be a close case, the Court cannot conclude that the ALJ's step three determination was supported by substantial evidence.

In sum, the ALJ erred by considering Rebecca's physical impairments only under listing 14.02 when at least listing 14.09 needed to be considered as well. And the ALJ's analysis under listing 14.02 was too short and conclusory for the Court to provide meaningful review, especially because there is evidence in the record that might well

---

[9] "Sjögren's syndrome is an immune-mediated disorder of the exocrine glands. Involvement of the lacrimal and salivary glands is the hallmark feature of this condition, resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough. Severe fatigue and malaise are also frequently reported." *Sjögren's Syndrome*, Soc. Sec. Law & Prac. § 42:94, Westlaw (last updated Mar. 2023).

[10] A malar rash, "also named a butterfly rash, is a common facial presentation of multiple disorders. It is characterized by an erythematous flat or raised rash across the bridge of the nose and cheeks, which usually spares nasolabial folds. It may be transient or progress to involve other areas of facial skin." Sara Naji Rad and Priyanka Vashisht, *Malar Rash*, National Institutes of Health (last updated Sept. 12, 2022), https://www.ncbi.nlm.nih.gov/books/NBK555981/#:~:text=Malar%20rash%2C%20also%20named%20a,other%20areas%20of%20facial%20skin.

support that a finding that Rebecca's fibromyalgia was disabling at step three.  Remand is therefore necessary so that the ALJ can provide a better explanation of why Rebecca's physical impairments did not meet or medically equal the criteria under listing 14.02, listing 14.09, or any other relevant listing.[11]

## CONCLUSION

The Commissioner's motion for judgment on the pleadings, Docket Item 10, is DENIED, and Rebecca's motion for judgment on the pleadings, Docket Item 8, is GRANTED in part and DENIED in part.  The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated:    April 14, 2023
          Buffalo, New York

                                                    */s/ Lawrence J. Vilardo*
                                                    LAWRENCE J. VILARDO
                                                    UNITED STATES DISTRICT JUDGE

---

[11] The Court "will not reach the remaining issues raised by [Rebecca] because they may be affected by the ALJ's treatment of this case on remand."  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Beers v. Comm'r of Soc. Sec.*, 449 F. Supp. 3d 96, 103-04 (W.D.N.Y. 2020) (citations omitted) ("However, because the Court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the Court declines to reach these issues.").